IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELBY TYRONE CLARK,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 5:22-cv-81-JDW |
| KENNETH KALTESKI, *et al.*,<br>    Defendants. | :<br>:<br>: |

### MEMORANDUM

Plaintiff Shelby Tyrone Clark, an inmate at Lehigh County Jail ("LCJ"), filed this civil rights action *pro se* naming twenty-three Defendants, twenty-one of whom work at LCJ or for its contract medical care provider Prime Care Medical, as well as the United States, and Judge Anna-Kristie Morff Marks. Each Defendant is named in his or her official and individual capacities. Mr. Clark seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Mr. Clark leave to proceed *in forma pauperis* and, with the exception of one claim, dismiss his Complaint in part with prejudice and in part without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      FACTUAL ALLEGATIONS**

Mr. Clark's complaint includes a laundry-list of complaints about actions that correctional officials and medical providers took. The Court will summarize them here only to the extent they are relevant to the Court's screening of this *pro se* complaint.

### A.     Health Care-Related Claims

In December 2020, Dr. Deborah Wilson and Physicians' Assistant Megan Hughes conducted separate evaluations of Mr. Clark. During those evaluations, he disclosed to them that he suffered from arthritis, major depression, PTSD, and anxiety. He also told Director of Nursing Elizabeth Moore and Health Services Administrator Amanda Benner about his conditions. He did not receive treatment for those conditions until May 2021.

In early 2021, Mr. Clark asked to see a dentist due to tooth pain. Dr. Kenneth Kalteski performed a dental exam but refused to treat the source of the pain because of the cost involved, even though Mr. Clark was experiencing difficulty eating and sleeping. Dr. Kalteski also spoke aloud about Mr. Clark's medications while other inmates were present and "attempted to denigrate [Clark] by attempting to show off [his] decaying tooth to the escorting CO." (ECF No. 2 at 10, ¶ 2.)

In March 2021, Nurse Jane Doe allegedly denied Mr. Clark treatment when he suffered a minor concussion and cut lip in a physical altercation. Then, in April 2021, another inmate threw urine and feces at Mr. Clark. Mr. Clark asked to be checked for communicable diseases after this incident, but Nurse Lillian Thomas denied him treatment telling him "if nothing got in your eyes or mouth you'll be fine." (*Id*. at ¶ 3.) Nothing got in Mr. Clark's eyes or mouth, but he asserts that his PTSD causes him to bite his nails and fingers. He asserts he was diagnosed with a canker sore in December 2021 – some eight months after the

2

incident – but Ms. Hughes denied him treatment because "there was no treatment available." (*Id*.) He says he endured three to four days of sharp pain on his inner lip.

Mr. Clark also complains that, at various times, Nurses Emil Sofia and Lillian Thomas "spoke aloud" about his prescriptions in the presence of other inmates while dispensing his medication. (*Id*. at 11, ¶ 4.)

Mr. Clark asserts that in October 2021, Dr. Wilson failed to approve him receiving Vitamin D that he needed to promote skin, hair, and nail growth.

**B.    Claims Concerning Tainted Food**

In April 2021, after Mr. Clark ate tainted food, he requested to file a Prison Rape Elimination Act ("PREA") complaint, but Case Manager Josh Leadbetter and Administrative Lieutenant John Donate never gave him the form or instructions how to do so. This allegedly caused his grievance to be untimely. Mr. Clark also asserts the complaint was denied because the allegation he made did not fall within the scope of the PREA. Douglas Mette, a treatment supervisor, allegedly began to speculate about information that Mr. Clark sent to Case Manager Kelly Ford, even though Mr. Mette knew that the information was not addressed to him. In September 2021, Sergeant Pacchioni allegedly made a "subliminal remark" about the tainted food.

On November 10, 2021, Correctional Officer Manuel Ramos served Mr. Clark a breakfast tray that tasted like it contained soap or a cleaning chemical, as well as mucus. Mr. Clark asserts that Rick Takacs, the food service director at

3

LCJ, knows that inmates must receive wholesome and fresh food as required by the "inmate guidelines handbook." (*Id*. at 11, ¶ 7.)

### C. Claims Concerning Threats Of Violence And Other Misconduct

In June 2021, Correctional Officer Gregory Stoval called Mr. Clark to the C/O podium and allegedly made a verbal threat to Mr. Clark. On November 5, 2021, Correctional Officer Luis Carion allegedly got into a verbal dispute with Mr. Clark and threatened Mr. Clark with physical harm. Mr. Clark complained to Director Janine Donate about the incident. Warden Kyle Russel and Director Donate allegedly know about Mr. Clark's interactions with correctional officers at LCJ and "should have known to notify their subordinates of any penalties they may encounter if [Clark] were to report any kind of conduct prohibited." (*Id*. at 12, ¶ 12.) On September 25, 2021, Correctional Officer Alexander Watty allegedly gave Clark a law library tablet that had fecal matter on it.

On December 13, 2021, Correctional Officer John Doe allegedly gave Clark a document that had "a Post-it note tainted with blood" and was not wearing gloves during the transaction. (*Id*. ¶ 8.) This allegedly delayed Mr. Clark's communications with the Judicial Conduct Board and his lawyer. Mr. Leadbetter, a case manager at LCJ, allegedly failed to give Mr. Clark's paperwork to another case manager, which also delayed his communications.

Finally, Mr. Clark has named Judge Anna-Kristie Marks as a Defendant because she required him to pay the cost of a transcript he requested. Mr. Clark has also sued the United States because it employs the other defendants.

## II. STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that he is unable to pay for the costs of his suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, the Court must determine whether the complaint states a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry requires the court to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under that standard, the court must take all well-pleaded allegations as true, interpret them in the light most favorable to the plaintiff, and draw all inferences in his favor. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Moreover, because Mr. Clark is proceeding *pro se*, the Court must construe his pleadings liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. ANALYSIS

### A. Leave To Proceed *In Forma Pauperis*

Mr. Clark has completed the form provided on the Court's website for applications to proceed *in forma pauperis* and has attested under penalty of perjury that he cannot afford to pay the filing fees. (ECF No. 1.) Moreover, his application to proceed *in forma pauperis* demonstrates that he lacks the income or assets to pay the required filing fees. Therefore, the Court will grant him leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act,

Mr. Clark will nonetheless have to pay the full filing fee in installments. *See* 28 U.S.C. § 1915(b).

### B. Plausibility Of Claims In Complaint

Mr. Clark asserts constitutional claims against each Defendant under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Unconstitutional punishment, be it under the Eighth Amendment for convicted prisoners or the Fourteenth Amendment for pretrial detainees, includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell v. Wolfish*, 441 U.S. 520, 538–39, 539 n.20 (1979)). To satisfy the subjective component, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the prisoner's health or safety. *See Seiter*, 501 U.S. at 298-99. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

### 1. Claims against the United States

Mr. Clark has named the United States as a Defendant because he claims it employs other Defendants. That allegation is at odds with his other allegations. In any event, the United States is immune from suit unless Congress waives that immunity. *See United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). No statute waives the Government's immunity in this case. The Court will dismiss all claims against the United States with prejudice.

### 2. Claims against Judge Marks

Judges have absolute immunity from suit for acts or omissions they take in their judicial capacity. *See Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). Judge Marks acted in her judicial capacity when she required Mr. Clark to pay for the transcript. She is immune from suit, and the Court will dismiss the claims against her with prejudice. In addition, the claims against Judge Marks in her official capacity are really claims against the Lehigh County Court of Common Pleas, which is part of Pennsylvania's Unified Judicial System and is therefore immune from suit under the Eleventh Amendment. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

### 3. HIPAA-related claims

There is no private right of action under HIPAA. *See Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, Civ. A. No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and*

*recommendation adopted,* 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018). Accordingly, the Court will dismiss with prejudice all claims under HIPAA.

### 4. PREA claims

"While the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action." *Walsh v. N.J. Dep't of Corr.*, Civ. A. No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Frederick v. Snyder Cty. Prison*, Civ. A. No. 18-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019). Mr. Clark therefore cannot maintain a claim under PREA. To the extent Mr. Clark challenges the quality of the investigation into his PREA complaints, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003). The Court will therefore dismiss all PREA-related claims with prejudice.

### 5. Verbal threats

Verbal threats or taunts, without more, do not violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012). This includes verbal sexual threats or harassment. *See Bower v. Price*, Civ. A. No. 17-1473, 2018 WL 1334985, at *3 (M.D. Pa. Mar. 15, 2018). The following claims fail a result:

- Claims about Mr. Clark's verbal dispute with Officer Carion;
- Claims about Officer Stoval's alleged threat against Mr. Carter;

8

- Claims about Mr. Mette's threat against Mr. Clark concerning Mr. Clark's PREA complaint; and
- Claims about the "subliminal remark" that Sergeant Pacchioni made.

Because each of these claims arises only from a verbal threat, the Court will dismiss them with prejudice.

### 6. Tainted food

"Under the Eighth Amendment . . . inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citation omitted). Mr. Clark's allegations that Officer Ramos served him a tainted tray of food and that Mr. Takacs does not provide wholesome and fresh food do not satisfy either the objective or subjective components of an Eighth Amendment or a due process claim. Mr. Clark does not allege that he was sickened by the food or even that he did more than just taste it before discovering it was tainted. Even if he had been sickened, "isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." *Nickles v. Taylor*, Civ. A. Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010). Mr. Clark does not allege he was malnourished, that he became ill due to systemic problems with inadequate or spoiled food, or that a significant portion of his diet consisted of such food.

Mr. Clark also has not offered any facts from which a court could reasonably infer deliberate indifference by Officer Ramos or Mr. Takacs with respect to food quality or to the minimum requirements of providing a non-harmful diet based on the single discreet incident he describes. Finally, to the extent Mr. Clark alleges that Mr. Takacs violated the LCJ handbook, the violation of a handbook does not violate the Constitution. *See Bowman v. Wetzel*, Civ. A. No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020). The Court will dismiss these claims, but it will do so without prejudice and give Mr. Clark an opportunity to file an amended complaint to cure these pleading failures, if he has a basis to do so.

### 7. Paperwork-related claims

Mr. Clark complains that various paperwork-related claims, including Officer Doe giving him a bloody Post-It, Mr. Leadbetter's failure to pass along paperwork, and Officer Watty giving him a dirty tablet, interfered with his right to counsel and delayed his communication with the Judicial Conduct Board. But it's not clear how they impacted his right to counsel or whether they caused any actual harm to that right. The Court will therefore dismiss these claims without prejudice. If Mr. Clark has a basis to plead actual harm, he can do so in an amended complaint.

### 8. Medical deliberate indifference

To state a constitutional claim based on the failure to provide medical treatment, either as a pretrial detainee or a convicted prisoner, a prisoner must

allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal

involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Mr. Clark's claim against Dr. Kalteski, alleging that he performed a dental exam but refused to treat the source of Clark's pain because of the cost involved even though Clark was experiencing difficulty eating and sleeping, is sufficient to assert a plausible claim and will be served for a responsive pleading. His remaining claims concerning medical treatment fail, though.

Mr. Clark's claim against Dr. Wilson, Ms. Hughes, and Ms. Benner concerning arthritis, depression, PTSD, and anxiety does not allege a plausible claim for deliberate indifference because Mr. Clark does not allege what treatment he required before May 2021. Nor does he allege that any of these Defendants knew he needed medical treatment but intentionally refused, delayed, or prevented him from receiving that treatment. The claim against Nurse Doe alleging she denied Mr. Clark treatment when he suffered a minor concussion and cut lip in a physical altercation is also not plausible since it is conclusory, and Mr. Clark fails to allege what treatment he required and that Nurse Doe allegedly refused to provide.

The allegation against Nurse Thomas involving the incident where another inmate threw urine and feces at Mr. Clark is also not a plausible deliberate indifference claim because Mr. Clark does not allege that the other inmate hit his eyes or mouth. And his allegation that he could have been injured because he bites his nails and fingers is speculative and does not establish he suffered a

12

serious medical need arising from the incident. Finally, his allegation that he was diagnosed with a canker sore in December 2021 – some eight months after the urine and feces incident does not allege a plausible claim since Mr. Clark fails to explain how a canker sore constituted a serious medical need. For all of these claims, the Court will dismiss the claims without prejudice and give Mr. Clark an opportunity to provide more detail in an amended complaint.

The claim against Dr. Wilson based on his failure to approve Mr. Clark's request for Vitamin D is also not plausible because promoting skin, hair, and nail growth is not an objectively serious medical need. Because Mr. Clark cannot cure that flaw, the Court will dismiss that claim with prejudice.

### 9.     Claims against Warden Russel and Director Donate

The Court understands Mr. Clark to be alleging claims against Warden Russel and Director Donate because they are supervisors at LCJ and did not warn their subordinates about consequences for their conduct. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or

13

she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" a facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*).

Mr. Clark does not allege that Warden Russel or Director Donate established and maintained a policy, practice, or custom with deliberate indifference to the consequences. To the extent Clark's claims are based on their personal involvement, the allegations against Director Donate focus on her knowledge of verbal threats, but verbal threats alone cannot establish a constitutional violation. The allegation that Warden Russel and Director Donate "should have known to notify their subordinates of any penalties they may encounter if [Clark] were to report any kind of conduct prohibited" is wholly speculative and does not allege their participation in a constitutional violation. The Court will therefore dismiss the supervisory liability claims against Warden Russel and Director Donate, but it will give Mr. Clark an opportunity to cure these defects in an amended complaint.

    **10.    Official capacity claims**

The only claim that will survive this screening is Mr. Clark's claim against Dr. Katelski. That claim can only proceed against Dr. Katelski in his individual capacity because he does not work for the prison; he works for the private

entity. "Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit." *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F. Supp. 2d 791, 796 (D. Del. 2012). The Court will therefore dismiss the claims against Dr. Katelski in his official capacity with prejudice.

## IV.   CONCLUSION

Many of Mr. Clark's claims cannot succeed, and the Court will dismiss those with prejudice. Some of his claims might succeed, if Mr. Clark can truthfully allege additional factual detail. For those, he can file an amended complaint. His claim against Dr. Kalteski can proceed, however. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

February 8, 2022