**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHELBY TYRONE CLARK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:22-cv-81-JDW** |
| | : | |
| **KENNETH KALTESKI,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

Shelby Tyrone Clark has filed an Amended Complaint that ignores the Court's prior ruling and reasserts many claims that the Court has dismissed with prejudice. When a plaintiff proceeds *in forma pauperis*, as Mr. Clark is doing, the Court must determine whether the complaint states a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry requires the Court to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). It construes his pleadings liberally in conducting that inquiry. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Mr. Clark asserts constitutional claims against each Defendant under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and he must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Unconstitutional punishment, be it under the Eighth Amendment for convicted prisoners or the Fourteenth Amendment for pretrial detainees, includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective

component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell v. Wolfish*, 441 U.S. 520, 538–39, 539 n.20 (1979)). To satisfy the subjective component, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the prisoner's health or safety. *See Seiter*, 501 U.S. at 298-99. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

Mr. Clark's Amended Complaint, like his initial Complaint, contains a laundry list of grievances against officials at the Lehigh County Jail ("LCJ"). The Court reviews each category in turn. At the end, it will dismiss all claims in the Amended Complaint except for Mr. Clark's claims against Dr. Kenneth Kalteski, Dolores Lutzko, Amanda Benner, and Megan Hughes in their individual capacities.

I.    ANAYSIS

A.    Disclosure Of Private Information

In June 2021, Nurse Emil Sofia disclosed information about Clark's prescription where other inmates could hear, violating his right of privacy. Also, Nurse Lillian Thomas disclosed unspecified confidential information about Mr. Clark "amongst the inmate population" that left Mr. Clark distraught. (ECF No. 10 at 14.)

Prisoners maintain a substantive due process right to privacy in their medical information. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001). However, not all disclosures of medical information will violate a prisoner's right to privacy in his medical information; it "may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'" *Id.* at 317 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts construing prisoners' medical privacy claims have framed the right narrowly and have applied it to situations involving "unusual medical condition[s], which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through "humor or gossip[.]" *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (quote omitted), *aff'd,* 489 F. App'x 544 (3d Cir. 2012) (*per curiam*)).

Mr. Clark does not specify the condition for which he received medication, nor does he identify the information about which Nurse Thomas spoke aloud or the medication about which Nurse Sofia spoke where others could hear. He also fails to allege that the disclosure exposed him to ridicule, discrimination, or the potential of violence and harm due to the nature of the condition. Because his claims against Nurse Thomas and Nurse Sofia are undeveloped and conclusory, the Court will again dismiss them for lack of plausibility. Having already afforded Mr. Clark the opportunity to amend, the claims will be dismissed with prejudice

since further amendment appears to be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019).

### B.      Denial Of Medical Care

Mr. Clark asserts various claims where he did not get medical care to which he thinks he was entitled. To state a constitutional claim based on the failure to provide medical treatment, either as a pretrial detainee or a convicted prisoner, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in

a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In April 2021, a fellow inmate assaulted Mr. Clark by throwing urine and feces at him. Mr. Clark submitted a "sick call" request to be tested for sexually transmitted diseases. As noted in his original Complaint, Nurse Thomas denied the testing request because nothing entered his mouth or eyes. Mr. Clark has added allegations in his Amended Complaint that after another inmate assaulted him with urine and feces, he asked Nurse Thomas STD testing because he had open wounds on his fingers. That allegation fails to "nudge [the] claim[] across the line from conceivable to plausible." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). Having open wounds on his fingers does not make it plausible that Mr. Clark's exposure to urine and fecal matter required an STD test as a matter of constitutional necessity. Normally, the decision to test for a communicable disease is left to the discretion of medical professionals, not the Court. *See Gregory v. PHS Inc.*, No. 00-467, 2001 WL 1182779, at *4 (D. Del. Sept. 21, 2001). Mr. Clark does not allege that medical officials had reason to suspect that the other inmate involved in the incident had an STD or any other communicable disease, so nothing would take this case out of that norm.

In late December 2021, Mr. Clark developed a sore in his mouth that caused "sharp and stinging pain." (ECF No. 10 at 19.) Megan Hughes, a physician's assistant, indicated it was "a form of herpes," but she denied there was any treatment available. (*Id.*) He informed Amanda Benner, a Health

5

Services Administrator, of Ms. Hughes' determination, but she also declined to provide or direct treatment, despite Mr. Clark indicating awareness of treatments like "acyclovir." (*Id.*) Without treatment, Mr. Clark had open sores from December 26 through December 31, and he continues to have "flare ups." (*Id.*) Courts in the Third Circuit have viewed the sores, scabbing, and perpetual pain caused by untreated herpes sores as a serious medical need. *See Williams v. PA Dept of Corr.*, No. 3:18-CV-01150, 2019 WL 1429349, at *3 (M.D. Pa. Mar. 29, 2019). Thus, Mr. Clark's claims against Ms. Hughes and Ms. Benner for their refusal to provide any treatment for his herpes sore assert plausible claims. The Court will order them served for a responsive pleading.

On January 8, 2022, Mr. Clark was diagnosed with Covid-19 and prescribed medication. He alleges Nurse Dolores Lutzko told him his "medications had expired" on January 17. (*Id.* at 20-21.) On subsequent nights when Nurse Lutzko was on duty, she refused to give Mr. Clark his medication and lied about not dispensing it to him. (*Id.* at 21.) The severe abdominal pains, headaches, and difficulty breathing suffered by Mr. Clark after his diagnosis with Covid-19 constitute a serious medical need. His claims about Nurse Lutzko denying him treatment, taken as true and read liberally, are sufficient to proceed past statutory screening.

## C.   Tainted Food-Related Claims

According to Mr. Clark, Sergeant Victor Pacchiani, knowing of an incident where Mr. Clark's food was tainted with semen, told him "I got nut for you guys"

while serving dinner. (ECF No. 10 at 15.) This statement caused Mr. Clark severe mental suffering and led him not to eat his meal that evening. Verbal threats or taunts, without more, do not violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012). This includes verbal sexual threats or harassment. *See Bower v. Price*, Civ. A. No. 17-1473, 2018 WL 1334985, at *3 (M.D. Pa. Mar. 15, 2018). Mr. Clark's claim about Sergeant Pacchiani's statement, "I got nut for you," fails because it is nothing more than a verbal threat.

Mr. Clark also complains that on November 10, 2021, Defendants Manuel Ramos and Angel Rodriguez gave Mr. Clark oatmeal that had the "funny taste" of cleaning chemical and mucus, and he immediately spit the food out. (*Id.* at 18.) Mr. Clark does not allege that he was sickened or malnourished as a result; only that he had to spit out his food one time and that he skipped lunch another time. "Under the Eighth Amendment … inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citation omitted). Even if Mr. Clark had been sickened, "isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." *Nickles v. Taylor*, Civ. A. Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010). Because Mr. Clark alleges isolated incidents rather than systematic conduct, his claims cannot survive.

On another a day when Officers Ramos and Rodriguez were serving lunch, Officer Ramos told him "you better watch your tray." (*Id.*) This comment caused

Mr. Clark to not eat lunch that day. Officer Ramos's verbal threat cannot give rise to a claim. Nor does an isolated incident of skipping a meal constitute malnourishment.

Mr. Clark also contends that food at LCJ is often undercooked, and that from "time to time" when sausage breakfast links are served, they are served raw. He claims Defendant Rick Takacs, the Food Services Director, allows this undercooking as retaliation for grievances Mr. Clark filed. The occasional undercooking of a sausage does not demonstrate malnourishment. There is no allegation that undercooked or spoiled food constitutes a substantial part of Mr. Clark's diet, nor does Mr. Clark allege that he become ill as a result of Mr. Takacs conduct.

Finally, Mr. Clark's claim that Mr. Takacs served him cold food in retaliation for filing a grievance is not plausible. A prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5,

2020). Mr. Clark's retaliation claim is undeveloped, at best. His allegations are no more than conclusory, unsupported accusations of retaliation. Moreover, sporadically receiving cold or undercooked food cannot alone satisfy the deterrence element of a retaliation claim. *See Duran,* 923 F. Supp. 2d at 720.

The Court gave Mr. Clark a chance to amend his complaint about the claims once. Having done so, the Court will now dismiss them with prejudice. *See Jones,* 944 F.3d at 483.

### D.    Claims Regarding Tainted Materials

On September 25, 2021, Sergeant Alexander Watty passed a computer tablet to Mr. Clark "that contained fecal matter on it just before." (ECF No. 10 at 7.) Sgt. Watty knew about Mr. Clark's issues with other inmates and should have known not to pass him a tablet from another inmate. Then, on December 14, 2021, Corrections Officer Oeldjanbiurnes handed Mr. Clark a document that had a blood-stained Post-It note on it. Mr. Clark threw away the document believing it to be contaminated with a disease.

It is not clear what claim Mr. Clark asserts based on this conduct. To the extent he claims that the contact with these tainted materials constituted some sort of assault against him, it did not rise to the level of a seizure under the Fourth Amendment. Indeed, it is not clear from the pleadings that Mr. Clark actually came in contact with anything inappropriate or that he suffered any harm as a result. The Court gave Mr. Clark a chance to add detail to these claims, and he has not done so, so the Court will dismiss them with prejudice.

### E.      Claims Regarding Interference With Legal Relationship

Mr. Clark complains that Officer Oeldjanbiurnes's conduct interfered with his ability to communicate with his lawyer. He also complains that computer tables that inmates used to access the law library had difficulty establishing a wireless connection that that he is "constantly and consistently booted out." (ECF No. 10 at 16-17.) Finally, a few days before Thanksgiving of 2021, Josh Leadbetter, Mr. Clark's case manager, took time off from work. Mr. Clark needed to access documents for a legal filing to the Judicial Conduct Board aimed at getting his trial judge and his attorney disqualified from his criminal case, but Mr. Leadbetter did not give the documents to the covering case manager. As a result, Mr. Clark's counsel withdrew from representing him.

None of these allegations states a Sixth Amendment violation. In its prior Memorandum, the Court dismissed these claims with leave to amend, explaining "it's not clear how [these events] impacted [Mr. Clark's] right to counsel or whether they caused any actual harm to that right." *Clark*, 2022 WL 377402, at *4. Mr. Clark's Amended Complaint does not cure these defects.  Notably, these events occurred after Mr. Clark was convicted, but Mr. Clark has not explained how the delay caused him harm and violated his constitutional right to access to counsel, which attached before his conviction, not after.  Cf. *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (stressing pretrial detainee's right to counsel). Because Mr. Clark did not cure the problems with these claims, the Court will dismiss them prejudice.

10

F.      **Claims Against The Commonwealth**

Mr. Clark alleges the Commonwealth of Pennsylvania has a history of discrimination. To the extent this allegation attempts to state a claim against the Commonwealth for money damages, the Eleventh Amendment bars it. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Mr. Clark cannot cure that failure, so the Court will dismiss the claim with prejudice.

G.      **Claims against Warden Russel and Director Donate**

Warden Kyle Russell and Director Janine Donate knew about Mr. Clark's encounters with staff and inmates that deprived him of his rights. Mr. Clark also informed Warden Russell that Covid-19 guidelines were not being followed, including the wearing of masks and interactions with inmates that have tested positive.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quote omitted). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's

unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" a facility are insufficient. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).

Mr. Clark fails to allege that Warden Russell and Director Donate established and maintained a policy, practice, or custom with deliberate indifference to the consequences that caused Mr. Clark to suffer constitutional harm. There is also no allegation that either was personally involved in the claims that have passed statutory screening. To the extent Mr. Clark's additional claim against Warden Russell arises from his personal involvement or knowledge of insufficient actions to combat the spread of the Covid-19 virus, which led to Mr. Clark contracting the virus, this claim is also not plausible. *See Hope v. Warden York County Prison*, 972 F.3d 310, 325-31 (3d Cir. 2020). While Mr. Clark asserts that the response of prison officials was insufficient, he fails to allege that those officials failed to take concrete in response to the pandemic. His claim is therefore not plausible. He has had a chance to fix his claim, so the Court will dismiss it with prejudice.

### H.  Claims against Mike Armstrong

Mr. Clark alleges he attempted to contact United States Secret Service Agent Mike Armstrong, with whom Mr. Clark had "signed forms," "to infer to my past political indifferences, when he divulged to me my limits on free speech." (*Id.* at 21-22.) Mr. Clark's meaning in making this allegation is entirely unclear. To the extent he attempts to assert a claim for money damages against this federal official, his claim does not fall within one of those recognized as plausible under

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971). In any event, these allegations are far too vague and unclear to state a plausible claim against Agent Armstrong.

I.      **Official capacity claims**

The only claims that survive statutory screening are the claims of deliberate indifference to Mr. Clark's serious medical needs asserted against Dr. Kalteski, Ms. Lutzko, Ms. Hughes, and Ms. Brenner. Mr. Clark has named all four in their official as well as their individual capacities. The claims can only proceed against each in their individual capacities because they do not work for the prison; they work for the private entity that supplies medical services at LCJ.   *See Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 796 (D. Del. 2012). The Court will dismiss the official capacity claims, and it will do so with prejudice because Mr. Clark has had a chance to amend.

II.     **CONCLUSION**

Many of Mr. Clark's claims cannot succeed, and the Court will dismiss those with prejudice. His claims against Dr. Kalteski, Ms. Lutzko, Ms. Hughes, and Ms. Brenner can proceed, however, and will be served for a responsive pleading. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

April 20, 2022